[Nos. 22440–9–I; 22787–4–I. Division One. December 11, 1989.]

VIET CUONG NGUYEN, ET AL, *Respondents,* v. GLENDALE
CONSTRUCTION COMPANY, INC., ET AL, *Defendants,*
HOME OWNERS WARRANTY CORPORATION, *Respon-*
*dent,* HOMEOWNERS WARRANTY
INSURANCE COMPANY,
*Appellant.*

*Craig R. Watson* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for appellant.

*Dan R. Young, Bjorklund & Young, Stephen M. Moriarty,* and *Hackett, Beecher & Hart,* for respondents.

DEIERLEIN, J.*—The defendant, Homeowners Warranty Insurance Company (HOWIC) appeals a judgment in favor of Viet Cuong Nguyen and Phuong Hanh Thi Nguyen (Nguyen) for violation of the Consumer Protection Act. HOWIC also appeals the award of $32,715 in attorney's fees against it for violation of that act. Nguyen cross–appeals for a reversal of the trial court's award of attorney's fees in favor of another defendant, Home Owners Warranty Corporation (HOW). We affirm.

Nguyen purchased a new home from a builder, Glendale Construction Company, on June 6, 1984. Nguyen was aware that the home was covered by a HOW warranty, *i.e.*, a written warranty by the builder to repair or correct certain defects which may occur, together with an insurance undertaking by HOWIC to the effect that if the builder did not correct a covered defect, then HOWIC would correct the same or pay the homeowner any loss suffered therefrom.

Both HOW and HOWIC are wholly owned subsidiaries of Home Warranty Corporation, which is in turn owned by thousands of builders throughout the country, including the builder in the instant action. HOW is the administrator of the builder's limited warranty under the HOW warranty program, while HOWIC provides coverage after default of the builder. The warranty program is evidenced by written limited warranty agreement; the coverage agreement is contained in an instrument titled Certificate of Insurance. HOW also indirectly pays the fees of the dispute settlers who are sent out to determine whether there was a builder default. Dispute settlers attend a 1–day training seminar on how to construe the HOW policy.

It is the builder's responsibility to enroll a house in the program upon transfer of title. However, Nguyen's warranty application was not received by HOW until November 1984.

---

*Judge Walter J. Deierlein, Jr., is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Nguyen received his written copy of the warranty in February or March 1985; the same having an effective date of June 6, 1984, the date title passed to Nguyen. Nguyen had some familiarity with the HOW program from previous dealings.

Nguyen experienced water leaking into his basement in September 1984. He repeatedly asked the builder to correct the problem. The builder refused to do so. This particular defect was covered under the HOW warranty for a 1–year period from the commencement date of the agreement, and written claim for loss was required to be submitted within 30 days of the expiration of the warranty period.

Because the builder did not fix the leaky basement, Nguyen made such a written request for warranty performance from HOW in January 1986. Under the terms of the warranty, HOW then arranged for "informal dispute settlement" between the builder and Nguyen "by a neutral third party." Wayne Fisher was selected as the dispute settler. Fisher visited Nguyen's home to determine whether or not the leaky foundation and flooding basement were the responsibility of the builder. He determined that there was no builder responsibility because the warranty had expired. Fisher determined that it had expired on the grounds that no written claim was made to HOW within 30 days after the end of the 1–year coverage period as required by the policy. HOWIC then notified Nguyen that since the coverage term had expired, it had no responsibility for correcting the defect.

The HOWIC policy provides as follows:

**Coverage During First Year.** Your Builder warrants that, for one year beginning on the commencement date, the home will be free from defects due to noncompliance with the Approved Standards attached to this Warranty.

. . . .

**Time of Notice of Claim.** You must give written notice of a defect in any item under this Warranty to HOW no later than 30 days after the warranty coverage on that item expires. If such notice is not given to HOW by that deadline, the claims for the defect will be rejected.

On April 15, 1986, Nguyen filed a suit against the builder for breach of warranty in failing to fix the leaking basement and against HOW for specific performance of its contract to take care of defects which the builder did not cure, or for damages.

The matter was heard before an arbitrator pursuant to the Superior Court Mandatory Arbitration Rules in February and March 1987. Nguyen timely requested a trial de novo following the arbitrator's award in favor of the defendants.

On December 22, 1987, Nguyen filed an amended complaint. The complaint named the builder in its corporate role, the husband and wife owning the corporate builder in their individual capacities, and HOW. It alleged claims of violation of express warranty, misrepresentation on the part of the builder, and failure to disclose material defects. It alleged a Consumer Protection Act claim against HOW for bad faith refusal to settle and "pay to plaintiffs the benefits of their policy of insurance." It also alleged a claim of trespass against the builder in his personal capacity.

In response to a motion brought by Nguyen, the court joined HOWIC as a party defendant on March 25, 1988. On April 5, 1988, the first day of trial, Nguyen took a voluntary nonsuit against HOW, leaving the builder and HOWIC as the only defendants.

Evidence at trial showed that the builder had violated local building codes in connecting the roof downspouts to the foundation drain, had failed to use gravel in the trench for the foundation drain, and had incorrectly installed the drain so that it became plugged and permitted cracking in the basement walls and floor through which water entered the house.

The builder asserted that Nguyen's basement did not leak, but that Nguyen was pouring water in his own basement. The jury found in answers to special interrogatories that the basement of Nguyen's home was leaking and that such leaking began within 1 year of the purchase on June 6, 1984. The builder did not appeal this finding and has paid

to Nguyen the $11,960.40 awarded by the jury in damages for the builder's breach of his express warranty.

The trial court believed that RCW 48.18.200(1) and (2) applied to this case. Accordingly, it instructed the jury sua sponte as follows:

> You are instructed that the insurance policy in this case has a provision stating that written notice of a defect must be given HOW Insurance Company within thirteen months of the commencement of the policy in order for the defect to be covered under the policy. This provision is not enforceable in this State because of a specific statute and it is not a valid reason for the insurance company to refuse to pay the benefits under the policy.

Instruction 12. The trial court also instructed the jury that:

> In order to prevail against HOW Insurance Company on their claim for violation of the Consumer Protection Act, the Nguyens have the burden of proving each of the following propositions:
> First, that HOW Insurance Company committed an unfair or deceptive act or practice in denying the Nguyens' claim because a written claim was not provided to the insurance company within 13 months of the commencement of the insurance policy.
> Second, that the Nguyens were injured in their business or property.
> Third, any unfair or deceptive act or practice of HOW Insurance Company caused the Nguyens not to receive benefits under the insurance policy.
> In determining whether an act or practice is unfair or deceptive, it is not necessary that HOW Insurance Company have had the intent to deceive or commit an unfair act or practice, but only that its act or practice, if any, had a tendency or capacity to mislead or be unfair.

Instruction 10.

The jury found that HOWIC had violated the Consumer Protection Act in not complying with its insurance policy by failing to pay Nguyen the damages resulting from the builder's refusal to perform under his warranty. The jury awarded to Nguyen $3,000 in increased damages. Following a posttrial hearing, the court awarded Nguyen $32,715 in attorney's fees against HOWIC for violation of the Consumer Protection Act. The trial court awarded $10,745 in attorney's fees payable by Nguyen to HOW because of the

voluntary nonsuit taken. HOWIC appeals the trial court's denial of its motion for a directed verdict on Nguyen's consumer protection claim against HOWIC. Nguyen cross–appeals for reversal of the award of attorney's fees in favor of HOW.

### CONSUMER PROTECTION ACT

HOWIC first argues that the trial court erred in instructing the jury that Nguyen's failure to notify the insurance company of his leaky basement within 13 months did not constitute a defense to payment under the policy pursuant to RCW 48.18.200.[1]

 HOWIC excepted to instructions 10 and 12 in general terms. We believe this exception to these instructions was not specific and clear enough to apprise the trial court of HOWIC's present arguments. Thus, the instructions become the law of the case. *See Cerjance v. Kehres,* 26 Wn. App. 436, 613 P.2d 192 (1980). Therefore, the issue is whether or not HOWIC has violated the Consumer Protection Act, RCW 19.86.

To recover damages under the Consumer Protection Act,[2] a private party must prove that the defendant's act or practice (1) is unfair or deceptive, (2) occurs in the conduct of any trade or commerce, (3) affects the public interest, and (4) causes (5) an injury to the plaintiff in his business or property. *Hangman Ridge Training Stables,*

---

[1]RCW 48.18.200(1)(c) reads in pertinent part:

"(1) No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement

". . . .

"(c) limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than property and marine and transportation insurances. In contracts of property insurance, or of marine and transportation insurance, such limitation shall not be to a period of less than one year from the date of the loss."

[2]RCW 19.86.020 provides as follows:

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

*Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

The element at issue in the present case is whether HOWIC committed an unfair or deceptive act or practice in denying Nguyen's claim because a written claim was not provided to HOWIC within 13 months of commencement of the policy. In other words, whether an attempt to enforce the 30–day limitation which tolls expiration of the warranty coverage, in light of RCW 48.18.200(1)(c) indicating that such an attempt to enforce is unlawful, is a violation of the Consumer Protection Act.

█ HOWIC argues that denial of coverage was not in bad faith and did not violate the Consumer Protection Act because it was based on a reasonable interpretation of the policy. However, it is presumed that people know the law. *Hutson v. Wenatchee Fed. Sav. & Loan Ass'n,* 22 Wn. App. 91, 98–99, 588 P.2d 1192 (1978). The 30–day provision in the HOW warranty was unenforceable under RCW 48.18-.200(1)(c). HOWIC's attempts to enforce it in spite of the Washington statute was an unfair practice.

HOWIC also argues that it has not violated the Consumer Protection Act because it proceeded under the reasonable belief that the Product Liability Risk Retention Act, 15 U.S.C. § 3901 *et seq.* (RRA), applied to the HOW program and, thus, it was exempt from Washington state law. 15 U.S.C. § 3902(a) provides as follows:

> Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation or order to the extent that such law, rule, regulation, or order would—
> (1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered [which in this case is Delaware] may regulate the formation and operation of such a group . . ..

15 U.S.C. § 3901(a)(4) provides in part as follows:

> "[R]isk retention group" means any corporation or other limited liability association—
> (A) whose primary activity consists of assuming and spreading all, or any portion, of the liability exposure of its group members;

(B) which is organized for the primary purpose of conducting the activity described under subparagraph (A);

■ Central to the determination of whether HOW's undertakings are contemplated by the RRA is whether HOW's primary activity is the assumption and spreading of the products liability exposure of its members, the builders. In *Home Warranty Corp. v. Caldwell,* 777 F.2d 1455, 1487 (11th Cir. 1985), the court stated that it agreed with the decision of the District Court in *Home Warranty Corp. v. Elliott,* 572 F. Supp. 1059, 1065–67 (D. Del. 1983) that the coverage provided during the first 2 years of the HOW program does not constitute assumption and spreading of the product liability risk exposure of its member builders, as HOW reserves the right during the term to seek reimbursement for amounts paid for the benefit of the homeowner. Such coverage more closely resembles surety insurance than liability insurance. *Home Warranty Corp. v. Caldwell, supra* at 1487.

We find that HOWIC has failed to prove that it comes within the requirements of the RRA.[3] HOWIC has not made a showing that it meets the criteria for a risk retention group. Furthermore, under the holding in *Home Warranty Corporation v. Caldwell, supra,* the HOW program does not constitute assumption and spreading of the product liability risk exposure of its member builders, and thus fails to meet the requirements of the RRA. Therefore, HOWIC is not exempt from Washington state law.

While we do not believe the RRA applied, it is also quite apparent that HOWIC was not relying on a possible exemption from state law in denying Nguyen's claim. HOWIC specifically denied the claim based on the expiration of the warranty coverage. Thus, HOWIC cannot rely

---

[3]HOWIC argues that a consent order attached as exhibit 6 to its brief recognizes that HOWIC comes under the RRA in the state of Georgia. However, we do not consider this order because it was not offered at trial and is not part of the record. *See Neilson v. Vashon Island Sch. Dist. 402,* 87 Wn.2d 955, 957, 558 P.2d 167 (1976).

on the RRA in arguing that denying the claim was not an unfair and deceptive practice.

█ HOWIC next argues that it was acting as a guarantor and, therefore, was only collaterally liable for the builder's warranty performance. However, an examination of the policy indicates that the program has two aspects: the builder's warranty to the homeowners and HOWIC's insurance to the homeowners of those warranty obligations. Section II of the policy provides that "[i]n consideration of the premium received . . ., [HOWIC] ("Insurer") does hereby certify that the home described on the Declarations page is insured against loss resulting from Builder Default . . .". "'Builder Default' is a failure by the Builder to perform its obligations under the Home Warranty." The policy further provides that "[i]f a Builder Default . . . is covered by the Insurance Coverage, the Insurer will repair or replace that defective item or will pay the Purchaser the reasonable actual cost of such repair or replacement."

HOWIC's argument that it was merely a guarantor misinterprets the plain language of the policy. Although the claims are initially directed to the builder, under the policy HOWIC certifies that it will repair or replace defective items where there is a failure by the builder to perform its obligations under the home warranty. Thus, HOWIC is liable as an insurer.

## ATTORNEY'S FEES

Nguyen argues that the trial court erred in awarding attorney's fees to HOW where Nguyen requested a trial de novo after mandatory arbitration under the provisions of MAR 7.3, where HOW was nonsuited on the first day of trial and the action continued against its sister corporation HOWIC, where HOW's attorneys also represented HOWIC and continued to represent HOWIC during the trial, and where the relevant issues were at all times essentially the same.

Attorney's fees may be recovered only when authorized by a private agreement between parties, a statute, or a recognized ground of equity. *Mellor v. Chamberlin,* 100 Wn.2d 643, 649, 673 P.2d 610 (1983). The statutory authority for attorney's fees in this case is RCW 7.06.060. RCW 7.06.060 states:

> The supreme court may by rule provide for costs and reasonable attorney's fees that may be assessed against a party appealing from the [mandatory arbitration] award who fails to improve his position on the trial de novo.

MAR 7.3 was adopted pursuant to RCW 7.06.060. MAR 7.3 specifies the conditions for awarding attorney's fees in an appeal from a mandatory arbitration award:

> The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo.

The purpose of MAR 7.3's second provision regarding assessing costs and attorney's fees upon the withdrawal of a trial de novo request is to deter such requests made solely to delay enforcement of the award. Judicial Council Comment, MAR 7.3 (Comment deleted by order dated June 30, 1989); *see also Christie–Lambert Van & Storage Co. v. McLeod,* 39 Wn. App. 298, 302, 693 P.2d 161 (1984).

■■ A trial court's award of attorney's fees will be reversed on appeal only if the reviewing court finds an abuse of discretion has been committed. *Meyer v. UW,* 105 Wn.2d 847, 856, 719 P.2d 98 (1986). Therefore, the question is whether the court's conclusion was the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In the present case, HOWIC and HOW were represented by the same counsel. HOW and HOWIC are both subsidiaries of Home Warranty Corporation. HOW administers claims which HOWIC pays in the event HOW determines the claims are justified. Although they are closely interrelated, they are separate corporations. Nguyen initially sued

HOW for specific performance of the contract or for damages. After the arbitration award and subsequent request for a trial de novo, Nguyen filed an amended complaint which alleged a Consumer Protection Act claim against HOW for bad faith refusal to settle the claim. This claim was relevant only to HOWIC because it is the subsidiary having the obligation to pay claims. Therefore, shortly before trial HOWIC was joined as a defendant and HOW was dismissed by means of a voluntary nonsuit. The trial court, in ruling that HOW is entitled to attorney's fees, stated as follows:

> I think it took a while for the parties to figure this out, took a while for [the] plaintiffs' attorney to figure it out, because the corporate identities were very confusing and difficult to penetrate. But I think what we have is two different lawsuits. The plaintiff did appeal the adverse results of the first lawsuit and abandoned those theories very late in the game, those theories, to the large extent, representing property claims against the builder and his warrantor.

Apparently, the trial court believed that HOW was entitled to attorney's fees on the basis that the lawsuit involving HOW that went to arbitration and the lawsuit against HOWIC in superior court were distinct lawsuits, even though HOW and HOWIC were closely intertwined.

Nguyen argues that the purpose behind MAR 7.3 is not furthered by awarding attorney's fees in this case. It is clear from the record that Nguyen's request for a trial de novo was not made for the purpose of delaying enforcement of the award. The withdrawal of the request occurred only due to confusion regarding who was the proper defendant among three corporations with similar names and close interrelationships.

Although a stated purpose of MAR 7.3 is to discourage requests for a trial de novo made for the purpose of delay, there is no requirement that fee awards be made only where the request was made for the purpose of delay. Furthermore, even though HOW and HOWIC are closely related, they are separate entities with distinct legal obligations. The present case contained different claims than

those decided by arbitration. Thus, we find the trial court was well within its discretion in allowing attorney's fees to HOW.

### ATTORNEY'S FEES ON APPEAL

Nguyen argues that he is entitled to attorney's fees on appeal under RCW 19.86.090.

Washington follows the common law rule that each litigant pays the fees of his attorney and other costs in the absence of an agreement, statute or grounds in equity to the contrary. *Wilkinson v. Smith,* 31 Wn. App. 1, 15, 639 P.2d 768 (1982). The Consumer Protection Act provides adequate grounds for an award of attorney's fees on appeal in the present case. *Wilkinson v. Smith, supra. See* RCW 19.86.090.

Nguyen prevailed in the appeal for violation of the Consumer Protection Act. Therefore, we award Nguyen attorney's fees for work done in responding to HOWIC's appeal, which, after a review of the affidavit in support of attorney's fees, we have determined to be $3,906.25. Because Nguyen did not prevail on his cross appeal of the award of attorney's fees to HOW, we do not award attorney's fees for work done on the cross appeal.

Judgment affirmed.

GROSSE, A.C.J., and SCHOLFIELD, J., concur.

Reconsideration denied January 26, 1990.

Review denied at 114 Wn.2d 1021 (1990).