**Mary STURGEON,
Plaintiff/Respondent,**

v.

**ALLIED PROFESSIONALS INSURANCE CO., A Risk Retention Group, Inc., Defendant/Appellant.**

**No. ED 94605.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 8, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 10, 2011.

Application for Transfer
Denied Aug. 30, 2011.

someone else's Fourth Amendment rights by a    challenged search and seizure. *Id.*

Thomas E. Schwartz, Justin D. Guerra, St. Louis, MO, For Plaintiff/Respondent.

Gerald F. McGonagle, Rick A. Cigel, Kansas City, MO, For Defendant/Appellant.

Before SHERRI B. SULLIVAN, P.J., CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J.

## SHERRI B. SULLIVAN, P.J.

### Introduction

Allied Professionals Insurance Co., A Risk Retention Group, Inc. (Appellant) appeals from the trial court's judgment denying its motion to compel arbitration. We affirm.

### Factual and Procedural Background

On May 21, 2007, Mary Sturgeon (Respondent), a resident of Missouri and a licensed massage therapist, was covered by a professional liability insurance policy issued to her by Appellant when the massage table on which she was massaging a client in her Missouri employer's business collapsed, causing the client to fall and incur injuries. The client sued Respondent for her personal injuries. Respondent contacted Appellant and asked Appellant to provide her with a legal defense pursuant to her insurance policy. Appellant denied coverage and refused to defend Respondent in the personal injury suit, so Respondent hired her own legal counsel. The lawsuit against Respondent was ultimately dismissed.

On December 21, 2009, in the Circuit Court of the City of St. Louis, Respondent filed a breach of contract action against Appellant, alleging that Appellant's failure to defend her constituted a breach of the insurance contract, and seeking damages in the amount of the attorney's fees she incurred as a result of Appellant's failure to defend her.

On March 3, 2010, Appellant filed a motion to compel arbitration, pursuant to the mandatory arbitration clause in the insurance contract, to-wit:

V. GENERAL CONDITIONS

C. Arbitration. If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any

of the parties to the Policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration undertaken pursuant to the terms of this section shall be governed by the Federal Arbitration Act and shall occur in Orange County, California.

The motion was briefed and argued before the trial court, and on March 17, 2010, the trial court denied the motion, finding that Respondent cannot be compelled to arbitrate pursuant to the agreement because Missouri law prohibits mandatory arbitration clauses in insurance contracts and, although an arbitration clause in a contract is generally enforceable under the Federal Arbitration Act (FAA), the McCarran–Ferguson Act created an exception to this general preemption by ensuring that the states can regulate the business of insurance free from the inadvertent preemption by federal statutes of general applicability.

This appeal follows.

### Points on Appeal

In its first point, Appellant claims the trial court erred in denying its motion to compel arbitration pursuant to the FAA, in that the FAA requires Respondent to arbitrate this dispute, and Appellant was entitled to seek the trial court's intervention to order arbitration and stay or dismiss this case; Appellant has proven all of the elements necessary to obtain arbitration under the FAA, in that Appellant established the existence of a written arbitration agreement whose scope covers the instant dispute; Respondent's insurance policy explicitly provides that the FAA governs this matter; and the FAA governs this matter because Respondent's purchase of the policy involved interstate commerce.

In its second point, Appellant maintains the trial court erred in finding that Missouri law applies to this case and not California law, because Respondent's insurance policy had a California Choice of Law provision and the operation of Appellant's insurance program requires that California law applies to this case.

In its third point, Appellant asserts the trial court erred in holding that the Liability Risk Retention Act (LRRA) does not exempt Appellant, a risk retention group, from Missouri's restriction against arbitration provisions in insurance policies because the LRRA exempts risk retention groups from state laws that directly or indirectly regulate their operation, and Missouri's statute prohibiting arbitration provisions in insurance policies regulates the business of insurance.

### Standard of Review

■ An appellate court's review of a trial court's denial of a motion to compel arbitration is *de novo*. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo.banc 2009).

### Discussion

We address Appellant's second point first, as it involves the issue of which state's law should be applied to this case.

### Point II—Choice of Law

Appellant maintains the choice of law provision in Respondent's insurance policy prescribing the application of California law is valid and should be enforced by this Court. The choice of law provision provides:

Section V. GENERAL CONDITIONS

Q. Choice of Law. This Policy and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of California, including all matters of construction, validity, performance, and enforcement without giving effect to the principles of conflict of laws. Notwithstanding this provision, arbitration shall be governed by the Federal Arbitration Act.

In support of its argument that this Court should enforce the California choice of law provision, Appellant relies on California law. However, such reliance is putting the cart before the horse.

We recognize that generally parties may choose the state whose law will govern the interpretation of their contractual rights and duties. *Tri–County Retreading, Inc. v. Bandag Inc.*, 851 S.W.2d 780, 784 (Mo.App. E.D.1993). As long as the application of this law is not contrary to a fundamental policy of Missouri, we will honor the parties' choice of law provision. *Id.* Here, the application of California law would allow the arbitration clause in an insurance policy to be enforced. Such a result would be contrary to Missouri public policy, because Section 435.350[1] of the Missouri Arbitration Act prohibits mandatory arbitration provisions in insurance contracts. Section 435.350, entitled "Validity of arbitration agreement," provides that such provisions are invalid, unenforceable and revocable:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract, *except contracts of insurance and contracts of adhesion,* to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist

at law or in equity for the revocation of any contract. Contracts which warrant new homes against defects in construction and reinsurance contracts are not 'contracts of insurance or contracts of adhesion' for purposes of the arbitration provisions of this section.

[Emphasis added.] This section makes clear that Missouri law deems arbitration agreements in insurance contracts to be invalid. In accord, *Standard Security Life Ins. Co. of New York v. West*, 267 F.3d 821, 824 (8th Cir.2001); *Datacor, Inc. v. Heritage Warranty Ins. Risk Retention Group, Inc.*, No. 4:09–CV–1123 (CEJ), 2009 WL 5062137 at *2, 3 (E.D.Mo. December 16, 2009); *Tamko Building Products, Inc. v. Factory Mutual Ins. Co.*, No. 4:09–CV–1401 (CDP), 2009 WL 5216999 at *2 (E.D.Mo. December 30, 2009). "The laws and judicial decisions of our state, as well as the applicable principles of common law are essential in determining whether an arbitration provision in an insurance policy is contrary to our public policy." *Allen Foods, Inc. v. Lawlor*, 94 S.W.3d 436, 438 (Mo.App. E.D.2003), citing *Fidelity & Deposit Co. of Maryland v. Grand Nat. Bank of St. Louis*, 69 F.2d 177, 180 (8th Cir.1934). Public policy is declared in a statute. *Northland Ins. Co. v. Bess*, 869 S.W.2d 157, 159 (Mo.App. E.D.1993). Our legislature has expressed Missouri's public policy in the enactment of Section 435.350. See *Allen Foods*, 94 S.W.3d at 438.

Accordingly, we conclude that applying California law to Respondent's claim would be against Missouri public policy, because it would allow the enforcement of an arbitration clause in an insurance contract. Therefore, the California choice of law provision in Respondent's insurance policy is void and unenforceable. Missouri law applies to this case.

---

**1.** All statutory references are to RSMo.2006, unless otherwise indicated.

■ Although the foregoing analysis is dispositive of this point, we also note that California law is not applicable under a conflict of laws analysis. Missouri courts apply the most significant relationship test as set forth in Restatement (Second) of Conflict of Laws Section 188 when resolving choice of law issues. *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 396 (Mo.App. E.D.2000); *Emerson Elec. Co. v. Crawford & Co.*, 963 S.W.2d 268, 273–74 (Mo.App. E.D.1997). Section 188 of the Restatement employs the most significant relationship test. *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo.App. W.D.1997). Section 188(2) identifies five potentially significant contacts to be considered in a contract case when determining which state has the most significant relationship to the transaction and parties: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Armstrong Business Services, Inc. v. H & R Block*, 96 S.W.3d 867, 872 (Mo.App. W.D.2002); *Am. Country Co. v. Palumbo*, 25 S.W.3d 484, 487 (Mo.App. E.D.2000).

■ Significantly, in an action between parties to an insurance contract, the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law. Restatement (Second) of Conflict of Laws Section 193; *Sheehan*, 44 S.W.3d at 397; *Am. Country Co.*, 25 S.W.3d at 487; *Atlas Intermodal Trucking Serv., Inc. v. United Fire & Cas. Co.*, 973 S.W.2d 174, 178 (Mo.App. E.D.1998).

Applying these factors to the case at bar, Missouri clearly has the most significant relationship to the transaction. The insured risk is in Missouri, which is the most important factor of all. Respondent lives in Missouri. Respondent works in Missouri at a Missouri business, and the insurance covered her work in Missouri at that Missouri business. The lawsuit filed against Respondent which Appellant refused to defend was filed in Missouri by a Missouri plaintiff, for an accident and injuries occurring in Missouri. Respondent entered into the insurance contract in Missouri. Respondent's communications relating to the contract's formation occurred in Missouri.

Appellant is domiciled in Arizona and conducts business in California.

Based on these enumerated contacts, we find that Missouri has the most significant relationship to the insurance contract at issue, and thus Missouri law applies to this case on this basis as well.

For all the foregoing reasons, Point II is denied.

### Point I—Arbitration Agreement under the FAA

In its first point, Appellant maintains that Respondent's insurance policy contains a valid arbitration agreement whose scope covers Respondent's claim, and the application of the arbitration agreement to the claim is governed by the FAA. We disagree for the following reasons.

As set forth in our discussion of Point II regarding choice of law, Missouri law applies to this case. The arbitration agreement set forth in Respondent's insurance policy is invalid under Missouri law because it is prohibited by Section 435.350, and concomitantly against Missouri public policy. As illustrated above, Section 435.350 provides that "a provision in a written contract, *except contracts of insurance and contracts of adhesion,* to submit to arbitration any controversy thereafter arising between the parties is valid, en-

forceable and irrevocable...." [Emphasis added.] Therefore, Appellant's claim in its point that "Respondent's insurance policy contains a valid arbitration agreement" is without merit. For the reasons hereinbefore stated, it is not valid.

Appellant also maintains that the arbitration agreement is governed by the FAA, and thus presumably Missouri's invalidation of it is preempted by the federal act. Resolution of this argument involves some historical and legal background.

### The FAA and Preemption

Enacted in 1924, the FAA carried out Congress' intention to abolish the common law rule against judicial enforcement of arbitration agreements. *Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508, 510 (3d Cir.1988); see generally H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924). Henceforth, arbitration agreements were to be treated with the same respect due any other contract. *Osterneck*, 841 F.2d at 510; *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 225, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

The FAA specifically allows arbitration clauses in contracts, and makes no exception for insurance contracts. The FAA provides in pertinent part that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. Section 2.

■ As a general rule, an arbitration clause contained in a contract would be enforceable under the FAA, which preempts any contrary Missouri statute. *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067, citing *Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126, *2 (W.D.Mo.1996). Under the conventional application of the supremacy clause and rules of statutory construction, the FAA, a federal statute, would preempt Section 435.350 of Missouri's Arbitration Act, a state statute, insofar as it contravenes the FAA. *Stephens v. American Intern. Ins. Co.*, 66 F.3d 41, 43 (2d Cir.1995). However, there are exceptions.

### The McCarran–Ferguson Act and the Exception to FAA Preemption [2]

Although the FAA generally preempts state law to the contrary in cases involving interstate commerce, see *Teltech, Inc. v. Teltech Communications, Inc.*, 115 S.W.3d 441, 445 (Mo.App. W.D.2003), the passing of the McCarran–Ferguson Act created an exception. *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067, *Transit Casualty Co.*, 1996 WL 938126, *2 (W.D.Mo.1996); *Stephens*, 66 F.3d at 43. In *United States v. South–Eastern Underwriters Association*, 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), the Supreme Court held that insurance was commerce and therefore subject to the federal antitrust laws. In response to *South–Eastern*, Congress in 1945 passed the McCarran–Ferguson Act, which largely exempts the business of insurance from the federal antitrust laws,

---

**2.** An exception to federal preemption is sometimes referred to as "reverse preemption" or "inverse preemption." Reverse preemption is a form of inverse preemption that prevents a generally applicable federal law from inadvertently invalidating, impairing, or superseding state laws enacted to regulate the business

of insurance. See *Humana Inc. v. Forsyth*, 525 U.S. 299, 306–07, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999); see also *Ojo v. Farmers Group, Inc.*, 565 F.3d 1175, 1179 (9th Cir. 2009) and *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir.2010).

and explicitly recognized state regulation of insurance. *Swanco Ins. Company–Arizona v. Hager*, 879 F.2d 353, 357 (8th Cir.1989); *State ex rel. American Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 486 (Mo.banc 2003). 15 U.S.C. Section 1011 of the Act provides:

> Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

The Act further provides:

> (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. . . .

15 U.S.C. Section 1012(a), (b). See also *Stephens*, 66 F.3d at 43–44, and *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067 ("Under McCarran–Ferguson, [n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.").

■ "McCarran–Ferguson preserves state statutes, enacted 'for the purpose of regulating the business of insurance,' from preemption and leaves the regulation of the business of insurance to the states." *Stephens*, 66 F.3d at 43. In accord, *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067, quoting *Autry v. Northwest Premium Services*, 144 F.3d 1037, 1040 (7th Cir. 1998) ("Congress passed the McCarran–Ferguson Act to insure that the states can regulate the business of insurance 'free from the inadvertent preemption by federal statutes of general applicability.' "). See also *Datacor*, 2009 WL 5062137 at *2 ("The McCarran–Ferguson Act, 15 U.S.C. Sections 1101 et seq., prevents inadvertent federal preemption of a state statute regulating the insurance industry") and *Clark*, 106 S.W.3d at 486 ("Regulating the business of insurance is clearly within the duties of the separate states").

■ "The [McCarran–Ferguson] act applies to 'the type of state regulation that centers around the contract of insurance' and governs such questions as 'the type of policy which could be issued, its reliability, interpretation, and enforcement.' " *Clark*, 106 S.W.3d at 486, quoting *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

*Analysis*

■ Three considerations have evolved from the body of law set forth above that must be satisfied to earn the protection from preemption provided by the McCarran–Ferguson Act. These considerations are: (1) whether the federal statute specifically relates to the business of insurance; (2) whether the state law at issue was enacted for the purpose of regulating the business of insurance; and (3) whether the application of the federal law invalidates, supersedes or impairs the state law. *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067; see also generally, *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). In this case, the FAA does not relate to insurance and its application will necessarily invalidate the Missouri statute

which prohibits mandatory arbitration of insurance contracts. *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067. Accordingly, the first and third factors are satisfied.

■ As for the second factor, the Missouri statute prohibiting mandatory arbitration of insurance contracts was enacted for the purpose of regulating the business of insurance, in that it was designed to regulate the operation of an insurance contract. *Id.*; see also *Transit Casualty Co.*, No. 96–4173–CV–C–2, 1996 WL 938126 at *2 (W.D.Mo. June 10, 1996). "Common sense suggests that [Section] 435.350 regulates the business of insurance because it only exempts insurance contracts." *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1068. "[Section] 435.350 is an integral part of the policy relationship between the insurance company and the insured because it addresses the forum where all disputes concerning the policy will be resolved." *Id.* "Where and by whom a contractual dispute is resolved may have an affect [sic] on the substantive outcome of the litigation." *Id.*; see also generally *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "The fact that [Section] 435.350 addresses an arguably procedural aspect of the relationship between the insured and the insurer does not prevent it from being an integral part of their relationship." *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1068. The Supreme Court has held that a state law regulates the business of insurance even though it addresses only the administra-

tion of an insurance policy, and not its substantive terms. See *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 374–75, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). Accordingly, we conclude the second factor is satisfied as well.

Based on the foregoing authority, we find that the McCarran–Ferguson Act operates to bar the FAA's preemption of the Missouri Arbitration Act's exclusion of arbitration provisions from insurance contracts contained in Section 435.350. *Standard Security Life Ins.*, 267 F.3d at 824; *Datacor*, 2009 WL 5062137 at *2.[3] Therefore, Respondent is not required to arbitrate her dispute against Appellant under the FAA. Accordingly, Point I is denied.

### Point III—Arbitration Agreement under the LRRA

In its third point, Appellant maintains the LRRA exempts Appellant, as a risk retention group, from Missouri's restriction against arbitration provisions in insurance policies. Again, some historical background will assist the reader and is set forth as follows.

### Risk Retention Groups and Risk Purchasing Groups

In 1981, Congress enacted the Product Liability Risk Retention Act, Pub.L. No. 97–45, 95 Stat. 949 (1981) (PLRRA). The PLRRA was Congress's response to the problems businesses had encountered in obtaining product liability coverage. *Swanco Ins. Company*, 879 F.2d at 354. Premiums had increased dramatically, and

---

**3.** Courts in other jurisdictions have addressed the issue of whether the McCarran–Ferguson Act prevents a state's statute from being preempted by the FAA. See e.g., *Stephens*, 66 F.3d at 43, 45–6 (finding that the state statute regulated insurance under the McCarran–Ferguson Act, thus, it was not preempted by the FAA); *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc.*, 969 F.2d 931, 932 (10th Cir.1992) (holding that Kansas statute excluding contracts of insurance from valid arbitration agreements was not preempted by the FAA); *Washburn v. Corcoran*, 643 F.Supp. 554, 555–56 (S.D.N.Y.1986) (explaining that the statute at issue was for the purpose of regulating insurance and therefore, the FAA must yield to the state law). *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1068.

some businesses reportedly were unable to obtain coverage at any price. *Id.* The PLRRA attempted to redress the crisis by allowing businesses to purchase insurance at more favorable rates either by forming self-insurance pools called risk retention groups or by forming purchasing groups, which purchase group insurance from an existing insurer. *Id.* Congress intended to reduce the cost and increase the availability of product liability insurance and to preempt certain state laws that prohibited or hindered the formation of these groups. *Id.*

The PLRRA was amended by the Liability Risk Retention Act of 1986, Pub.L. No. 99–563, 100 Stat. 3177 (1986) (LRRA), to expand the scope of the preemption to enable risk retention and purchasing groups to provide not only product liability insurance but all types of liability insurance. *Id.* The LRRA also includes provisions dealing with the permissible scope of state regulation of risk retention and purchasing groups. *Id.*

Section 3 of the LRRA allows groups with similar types of risk to form and own their own insurance company to insure against their liability exposures. *Id.* The risk retention group is chartered in the group's state of domicile and this state is primarily responsible for the group's regulation. *Id.,* see 15 U.S.C. Section 3902(a)(1).

### Analysis

Thus, in summary, a "risk retention group" is defined as any corporation or other limited liability association (A) whose primary activity consists of assuming and spreading all, or any portion, of the liability exposure of its group members; and (B) which is *organized for the primary purpose* of conducting the activity described under subparagraph (A). 15 U.S.C. Section 3901(a)(4). Appellant is a risk retention group, not a risk purchasing group.

■ 15 U.S.C. Section 3902 of the LRRA provides in pertinent part as follows:

(a) Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation or order to the extent that such law, rule, regulation, or order would—

(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group.

*Nguyen v. Glendale Const. Co., Inc.,* 56 Wash.App. 196, 782 P.2d 1110, 1114 (Wash. App.1989). As set forth above, Section 3902(a)(1) of the LRRA only exempts a risk retention group from state laws that would "make unlawful, or regulate, directly or indirectly, the operation of a risk retention group...." 15 U.S.C. Section 3902; *Swanco Ins. Company,* 879 F.2d at 357. "Operation" is the key term in the federal statute's exemption: it means that a state may not pass laws that keep risk retention groups from operating as insurance companies; however, the LRRA preserves the state's traditional role in the regulation of insurance. *Mears Trans. Group,* 34 F.3d at 1017.

■ *National Home Insurance Co. v. King,* 291 F.Supp.2d 518 (E.D.Ky.2003) involves a Kentucky statute regarding the validity of arbitration agreements virtually identical to Section 435.350 of the Missouri Arbitration Act:

417.050 Validity of arbitration agreement; exempt agreements

A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter

arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. This chapter does not apply to:

. . .

(2) Insurance contracts.

KRS Section 417.050. With regard to the same issue before us now, i.e., whether a state statute declaring arbitration clauses in insurance contracts to be void somehow disturbs the continuation of risk retention groups, the *National Home Insurance Co.* court specifically found that "[p]rohibiting the enforcement of an arbitration clause does not 'make unlawful' the . . . operation of such a risk retention group." *National Home Insurance Co.*, 291 F.Supp.2d at 531.

Nor does Section 435.350 of the Missouri Arbitration Act prohibiting mandatory arbitration clauses in insurance contracts "regulate" the operation of Appellant *as a risk retention group.* The purpose of Section 435.350 of the Missouri Arbitration Act is to regulate *the business of insurance.* "The Missouri statute was enacted for the purpose of regulating insurance in that it was designed to regulate the operation of an insurance contract." *Standard Sec. Life Ins. Co.*, 127 F.Supp.2d at 1067. The LRRA allows risk retention groups to operate as insurance groups, by entering into insurance contracts, but the states' interpretation of those insurance contracts is not part of the preemption provided by the LRRA. In fact, the definitions section of 15 U.S.C. Section 3901(b) of the LRRA provides:

**Nothing in this chapter shall be construed to affect** either the tort law or **the law governing the interpretation of insurance contracts of any State,** and the definitions of liability, personal risk liability, and insurance under any State law shall not be applied for the

purposes of this chapter, including recognition or qualification of risk retention groups or purchasing groups. [Emphasis added.]

As such, Appellant's proclamation in its reply brief that "[Appellant] is entitled under the LRRA to operate its business free of any regulation by the individual states" is without merit according to the terms of Section 3901(b) of the LRRA itself, as set forth above. The interpretation of the insurance policies promulgated by Appellant's business of insurance is subject to Missouri law, no different than are the policies of any other insurance company. The LRRA's preemption of state law regulating the operation of Appellant as a risk retention group is not so broad as to exempt Appellant's policies from the states' regulation of the contents of insurance contracts. "State laws enacted for the purposes of regulating the business of insurance do not yield to conflicting federal statutes unless federal statutes specifically provide otherwise." *American Deposit Corp. v. Schacht*, 84 F.3d 834, 837–38 (7th Cir.1996), citing *Fabe*, 508 U.S. at 507, 113 S.Ct. 2202.

The core of the business of insurance includes the insurer-insured relationship and the interpretation and enforcement of the insurance policy. *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). Section 435.350, which is in fact an arbitration statute, applies to the processing of disputed insurance claims in the insurance industry as a whole.

Appellant cannot complain when it is being treated like every other insurance group in Missouri, e.g., subject to Missouri's prohibition against arbitration clauses in insurance contracts. Section 435.350's arbitration clause prohibition has nothing to do with Appellant's status or operation as a risk retention group.

Therefore, there is nothing in Section 435.350 to be preempted by the LRRA. Appellant has not demonstrated otherwise.

Missouri has decided, as have other states, that mandatory arbitration clauses in *any* insurance contract are void and against public policy. Appellant in effect argues that its insurance policies have allowed mandatory arbitration clauses even though no other insurance group's policies are allowed them. Such disparate treatment has absolutely no reasonable justification or backing in the LRRA. In fact, as stated above, the LRRA specifically leaves the interpretation of contracts to the states.

The LRRA's protection of risk retention groups is based on states' possible discrimination against them. Missouri's prohibition of arbitration clauses in insurance contracts applies to insurance companies across the board, and has no discriminatory effect on risk retention groups. In accord, *National Home Ins. Co.*, 291 F.Supp.2d at 531 (application of an anti-arbitration statute to a risk retention group does not offend the non-discrimination principle underlying the LRRA; to the contrary, requiring a risk retention group to abide by this statute puts it on equal footing with all other insurers who are prohibited from enforcing arbitration clauses in agreements with their insureds).

Missouri's prohibition of mandatory arbitration clauses in insurance contracts is for the protection of the insured. As set forth above in the historical background, the LRRA and risk retention groups were created for the protection of those needing insurance. Therefore, the philosophy behind Section 435.350 and 15 U.S.C. 3902(a)(1) is the same, the protection of the consumer.

Based on the foregoing, we conclude that Appellant's status as a risk retention group does not excuse it from Section 435.350's prohibition of arbitration clauses in contracts of insurance, nor does the LRRA provide preemption on this basis. Accordingly, Point III is denied.

*Conclusion*

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J., concur.