JOY COSSICH LOBRANO, Judge.
|, Plaintiff/Appellant, Inspeq Services, L.L.C. (“Inspeq”) filed this matter as an appeal of the December 18, 2014 judgment of the district court, which granted the peremptory exceptions of no cause and no right of action filed by the Defendant/Ap-pellee, CPA Mutual Insurance Company of America Risk Retention Group (“CPA Mutual”) and ordered that CPA Mutual’s motion to compel arbitration or, alternatively, to stay is moot. Plaintiff raises a single assignment of error: that the district court “erred in granting the Peremptory Exceptions of No Cause of Action and No Right of Action filed by defendant CPA Mutual *177 by finding that Louisiana’s Direct Action Statute, La. R.S. 22:1269 (“Direct Action Statute”), is preempted by federal law set forth in the Liability Risk Retention Act (15 U.S.C. § 3902) (“LRRA”).”
DISCUSSION

Jurisdiction

As an initial matter, we must examine whether this Court has jurisdiction to review this matter. The district court judgment lacks decretal language as it does not name the party against whom the ruling is ordered and does not specify what relief is granted.
2Although the district court judgment granted the exceptions of no cause of action and no right of action, it failed to decree the dismissal with prejudice of In-speq’s claims against CPA Mutual. The absence of this necessary decretal language means that the judgment is not final and appealable, and thus for us to reach the merits of this appeal we must exercise our supervisory, rather than appellate, jurisdiction. See La. Const, art. V, §. 10(A).
As this Court explained in Bd. of Sup’rs of Louisiana State Univ. & Agric. & Mech. Coll. v. Mid City Holdings, L.L.C., 2014-0506, pp. 2-3 (La.App. 4 Cir. 10/15/14), 151 So.3d 908, 910:
We cannot determine the merits of an appeal .unless our jurisdiction is properly invoked by a valid final judgment. See Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Tech., Inc., 10-477, p. 12 (La.App. 5 Cir. 10/29/10); 52 So.3d 909, 915. “A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are' entitled.” La. C.C.P. art. 1841. " “A Valid judgment must be precise, definite and certain.... .The decree alone indicates thé décision.... The result decreed must be spelled out in lucid, unmistakable language. The quality of definiteness is essential to a proper judgment.” Input/Output Marine, 10-477, pp. 12-13; 52 So.3d at 915-16 (citations omitted).
“A final judgment shall be identified as such by appropriate language.” La. C.C;P. art. 1918. “ A final appealable judgment must contain decretal language, and it must name the party in favor of whom the' ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.’ ” Palumbo v. Shapiro, 11-0769, p. 5 (La.App. 4 Cir. 12/14/11); 81 So.3d 923, 927, quoting Input/Output Marine, 10-477, p. 13; 52 So.3d at 916. “The specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment.” Input/Output Marine, 10-477, p. 13; 52 So.3d at 916.
Because the judgment from which Inspeq appealed is lacking in definitive decretal language necessary for the exercise of our appellate jurisdiction, In-speq is not entitled as of right to appellate review, but may nonetheless invoke oúr supervisory jurisdiction, which is discretionary with us to grant. ■ See La. C.C.P. art. |s2201. The Louisiana Constitution of 1974 provides intermediate appellate courts with both appellate and supervisory jurisdiction. See La. Const, art. V, § 10(A). See also Pollard v. Alpha Technical, 2013-1239, p. 5 (La.App. 4 Cir. 2/5/14); 131 So.3d 1123, 1126. “[T]he difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right.” Livingston Downs Racing Ass’n, Inc. v. La. State Racing Comm’n, 96-1215, p. 3 (La. App. 4 Cir. 6/5/96); 675 So.2d 1214, 1216.
*178 When confronted with a judgment in an appellate context that is not final and appealable, this Court is authorized to exercise its discretion to convert that appeal to an application for supervisory review. See Stelluto v. Stelluto, 2005-0074, p. 7 (La.6/29/05); 914 So.2d 34, 39 (“[T]he decision :to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts.”). This Court has in similar circumstances ordinarily but not necessarily “converted ‘appeals’ of non-appealable judgments, to applications for supervisory writs in those cases in which the motions for appeal were filed, -within the thirty-day period allowed for the filing of applications for supervisory writs.” Favrot v. Favrot, 2010-0986, p. 6 (La.App. 4 Cir. 2/9/11); 68 So.3d 1099, 1104. See also Uniform Rules, Courts of Appeal, Rule 4-3.
Here, the-motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs. We thus exercise our ^discretion and convert the instant appeal of the December 18, 2014 judgment to an application for supervisory writ..

Exceptions of No.Cause of Action and No Right of Action

“Exceptions of no cause of action present'legal questions, and are reviewed under the de novo standard • of review.” Phillips v. Gibbs, 2010-0175; p. 3 (La.App. 4 Cir. 5/21/10); 39 So.3d 795, 797. This exception is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. Id., 2010-0175 at p. 3, 39 So.3d at 797-98. “All well-pleaded- allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court.” Foti v. Holliday, 2009-0093, p. 5 (La.10/30/09), 27 So.3d 813, 817. “The burden of demonstrating that ,a petition fails to state a cause of action is upon the mover.” Id., citing Ramey v. DeCaire, 2003-1299, p. 7 (La.3/19/04), 869 So.2d 114, 119.
Likewise, “[p]eremptory exceptions raising the objection of no right of action are reviewed de novo on appeal as they involve questions of law.” Fortier v. Hughes, 2009-0180, p. 2 (La.App. 4 Cir. 6/17/09), 15 So.3d 1185, 1186. “The exception of no right of action tests whether the plaintiff has a real and actual interest in the action.” Weber v. Metro. Cmty. Hospice Found., Inc., 2013-0182, p. 4 (La.App. 4 Cir. 12/18/13), 131 So.3d 371, 374, citing La. C.C.P. art. 927(5). The function of the exception is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the lawsuit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015, p. 4 (La.11/30/94), 646 So.2d 885, 888. “The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject-matter of the litigation.” Indus. Companies, Inc. v. Durbin, 2002-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216.
■ Inspeq brings its claims against CPA Mutual pursuant to the Direct Action Statute, set forth in La. RiS. 22:1269, which provides in pertinent part:
B. (1) The injured person ... shall have a right of direct action against the insui;er within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and. insurer jointly and in solido,...
[[Image here]]
*179 (2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana ...
Thus, the Direct Action' Statute has the effect of allowing injured parties to sue insurance companies of the party allegedly at fault directly. “The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured... In the absence of the Direct Action Statute, a plaintiff would have no right of action against an alleged tortfeasor’s liability insurer because the obligation between the plaintiff and the alleged tortfeasor is delictual in nature, and plaintiff has no contractual relationship with the tortfeasor’s insurer.” Green v. Auto Club Grp. Ins. Co., 2008-2868, p. 3 (La.10/28/09), 24 So.3d 182, 184.
|fiIn support of its peremptory exceptions, CPA Mutual argues that it is a risk retention group governed by the LRRA, a federal act, and that the LRRA preempts the Direct Action Statute, thereby precluding Inspeq from suing CPA Mutual under the Direct Action Statute.
CPA Mutual points to a provision of the LRRA found in 15 U.S.C. § 3902, which states;
(a) Exemptions from State laws, rules, regulations, or orders
Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule regulation, or order would—
(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation operation of such group ...
Claiming that the Louisiana Direct Action Statute regulates the operations of risk retention groups, CPA Mutual contends that it is therefore exempt from that particular state law. This rationale is consistent with the First Circuit’s holding in Courville v. Allied Professionals Ins. Co., 2013-9976 (La.App. 1 Cir. 6/5/15), 174 So.3d 659, 673 writ denied, 2015-1309 (La.10/30/15), 179 So.3d 615, which adopted an expansive and overly broad interpretation of the LRRA as set forth in Wadsworth v. Allied Professionals Insurance Company, 748 F.3d 100 (2nd Cir. 2014). We decline to follow ’the First Circuit because we find that Louisiana’s Direct |7Action Statute does not directly or indirectly regulate the operations of CPA Mutual. Instead, we agree with the reasoning set forth in Sturgeon v. Allied Professionals Ins. Co., 344 S.W.3d 205 (Mo. App.2011) and Nat’l Home Ins. Co. v. King, 291 F.Supp.2d 518 (E.D.Ky.2003). We find that because the Direct Action Statute does not regulate the operations of CPA Mutual, it does not fall within the-exemption provided at 15 U.S.C. § 3902(a)(1); thus, the Direct Action Statute is not preempted.
In Sturgeon v. Allied Professionals Ins. Co., the court examined whether -the LRRA preempts a state arbitration statute. In finding no preemption, the Missouri court explained: , ,
Section 3902(a)(1) of the LRRA only exempts a risk retention;group from state laws that would “make unlawful, or regulate, directly or indirectly, the operation of a risk retention group,, ” 15 U.S.C. Section 3902... [citations omitted] “Operation” is the key term in the federal statute’s exemption: it means that a state may not pass .laws that keep *180 risk retention groups from operating as insurance companies; however, the LRRA preserves the state’s traditional role in the regulation of insurance.
344 S.W.3d at 215.
The Missouri court further stated:
The LRRA allows risk retention groups to operate as insurance groups, by entering into insurance contracts, but the states’ interpretation of those insurance contracts is not part of the preemption provided by the LRRA. In fact, the definitions section of 15 U.S.C. Section 3901(b) of the LRRA provides:
Nothing in this chapter shall be construed to affect either the tort law or the law governing the interpretation of insurance contracts of any State, and the definitions of liability, personal risk liability, and insurance under any State law shall not be applied for the purposes of this chapter, including recognition or qualification of risk retention groups or purchasing groups.
Id. at 216 (alteration in original).
The court rejected the risk retention group’s arguments that it was “entitled under the LRRA to operate its business free of any regulation by the individual states,” finding the interpretation of its insurance policies was subject to Missouri law, “no different than are the policies of any other insurance company.” Id.
|RThe court further noted that the LRRA’s protection of risk retention groups is based on states’ possible discrimination against them, but that Missouri’s prohibition of arbitration clauses in insurance contracts applies to insurance companies across the board and has no discriminatory effect on risk retention groups. Id. at 217. Thus, the court stated that the risk retention group “cannot complain when it is being treated like every other insurance group in Missouri, e.g., subject to Missouri’s prohibition against arbitration clauses in insurance contracts. Section 435.350’s arbitration clause prohibition has nothing to do with Appellant’s status or operation as a risk retention group.” Id.
Likewise, in Nat’l Home Ins. Co. v. King, the court similarly noted:
When Congress expanded [the LRRA] in 1986 to cover all types of liability insurance, “it included provisions to preserve the states’ traditional role in regulating insurance and protecting the public.” [ ] In doing so, Congress sought to “augment[] the authority of non-chartering States to regulate solvency, trade practices and other matters” and it “contemplated that States may enact statutes and issue regulations to protect the public to the extent such action is not exempt by th[e] Act.”
291 F.Supp.2d at 530-31 (citations omitted).
In examining whether the LRRA required a risk retention group’s exemption from a state arbitration statute, the court determined that prohibiting the enforcement of an arbitration clause does not “make unlawful” the formation or operation of such a risk retention group. Id. The court further found that the application of the state statute to a risk retention group does not offend the non-discrimination principle underlying the LRRA. Id. Instead, the court reasoned, requiring the risk retention group to abide by the state statute “puts it on equal footing with all other insurers” in the state who face the same regulation. Id. ■
|8We find this reasoning persuasive. CPA Mutual has failed to demonstrate to this Court that a risk retention group should be treated differently than other insurance companies operating in Louisiana to which the Direct Action Statute *181 applies. We find that Direct Action Statute does not regulate the operations of CPA Mutual.
We further agree with Collins v. AAA Rent All, Inc., 812 F.Supp. 642, 644 (M.D.La.1993), which held that “[although 15 U.S.C. § 3901, et seq. exempts risk retention groups from certain state regulations, it does not expressly or impliedly preempt La. Revised Statute 22:655 [now La. R.S. 22:1269] which permits a plaintiff to directly sue the insurer of the defendant.”
Accordingly, we hold that the Louisiana Direct Action Statute is not preempted by the Liability Risk Retention Act.
For the reasons set forth in this opinion, we convert this appeal to a writ, grant the writ, reverse the December 18, 2014 judgment of the district court, and remand this matter to the district court for further proceedings consistent with this opinion.
APPEAL CONVERTED TO WRIT; WRIT GRANTED