Dr. Brett Speece, D.C., appellee, v. Allied
Professionals Insurance Company, a Risk
Retention Group, Inc., appellant.

___ N.W.2d ___

Filed September 19, 2014.    No. S-13-700.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. **Judgments: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
3. **Pretrial Procedure: Arbitration and Award: Final Orders.** The denial of a motion to compel arbitration is a final, appealable order because it affects a substantial right and is made in a special proceeding.
4. **Federal Acts: Insurance: Contracts: Arbitration and Award.** The Federal Arbitration Act does not preempt Neb. Rev. Stat. § 25-2602.01(f)(4) (Cum. Supp. 2012).
5. **Federal Acts: Insurance.** The Liability Risk Retention Act of 1986 is a federal act that specifically relates to the business of insurance.
6. **Federal Acts: Insurance: States.** The Liability Risk Retention Act of 1986 is the type of federal law excluded from the operation of 15 U.S.C. § 1012(b) (2012) of the McCarran-Ferguson Act, and therefore, the McCarran-Ferguson Act does not prevent the Liability Risk Retention Act of 1986 from being construed to preempt state law.
7. **Constitutional Law: Federal Acts: States.** Under the Supremacy Clause of the U.S. Constitution, state law that conflicts with federal law is invalid.
8. **Federal Acts: States: Intent.** Federal law preempts state law when state law conflicts with a federal statute or when the U.S. Congress, or an agency acting within the scope of its powers conferred by Congress, explicitly declares an intent to preempt state law. Preemption can also impliedly occur when Congress has occupied the entire field to the exclusion of state law claims.
9. **Federal Acts: Insurance: States: Intent.** In the Liability Risk Retention Act of 1986, Congress explicitly declared an intent to preempt state law regulating the operation of foreign risk retention groups except in certain enumerated instances.
10. **Federal Acts: Insurance: States.** The purpose of the Liability Risk Retention Act of 1986 is to permit risk retention groups to efficiently operate on a nationwide basis by providing that they are regulated by their domiciliary states with only limited variations in regulation in the other states in which they operate.
11. **Federal Acts: Insurance: Contracts: Arbitration and Award.** The prohibition of an arbitration clause in insurance policies pursuant to Neb. Rev. Stat. § 25-2602.01(f)(4) (Cum. Supp. 2012) regulates the operation of a risk retention group within the meaning of 15 U.S.C. § 3902 (2012) of the Liability Risk Retention Act of 1986.
12. **Federal Acts: Insurance: States.** The Liability Risk Retention Act of 1986, by its terms, preempts the application of Neb. Rev. Stat. § 25-2602.01(f)(4) (Cum. Supp. 2012) to foreign risk retention groups.

13. **Appeal and Error.** An appellate court will not consider an issue on appeal that the trial court has not decided.

Appeal from the District Court for Fillmore County: Vicky L. Johnson, Judge. Reversed and remanded for further proceedings.

Joseph S. Daly and Mary M. Schott, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., and Rick A. Cigel, of Cigel Law Group, P.C., for appellant.

Andrew D. Strotman, Jonathan J. Papik, and Cristin McGarry Berkhausen, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

Justin D. Eichmann, of Bradford & Coenen, L.L.C., for amicus curiae National Risk Retention Association.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.
### NATURE OF CASE
Allied Professionals Insurance Company (APIC) appeals the order of the district court for Fillmore County in which the court determined that Neb. Rev. Stat. § 25-2602.01(f)(4) (Cum. Supp. 2012) prohibited enforcement of the mandatory arbitration clause in the parties' insurance contract and overruled APIC's motion to compel arbitration. Section 25-2602.01(f)(4) generally prohibits mandatory arbitration clauses in insurance contracts. At issue is whether federal law preempts § 25-2602.01(f)(4). We conclude that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 through 16 (2012), does not preempt the state statute, but that the Liability Risk Retention Act of 1986 (LRRA), 15 U.S.C. §§ 3901 through 3906 (2012), does preempt application of the Nebraska statute to foreign risk retention groups, and that therefore, the district court erred when it determined that § 25-2602.01(f)(4) prohibited enforcement of the arbitration clause in the parties' insurance contract. We reverse the district court's order overruling

APIC's motion to compel arbitration and remand the cause for further proceedings.

## STATEMENT OF FACTS

Dr. Brett Speece, D.C., a chiropractor practicing in Exeter, Nebraska, purchased a professional liability insurance policy from APIC. APIC is a risk retention group incorporated in Arizona and registered with the Nebraska Department of Insurance as a foreign risk retention group. In our analysis, we sometimes refer to Nebraska as the nonchartering or nondomiciliary state. As a general statement, a risk retention group is an entity formed by persons or businesses with similar or related exposure for the purpose of self-insuring. See LRRA, 15 U.S.C. § 3901(a)(4).

The policy included a provision requiring binding arbitration in California of any dispute concerning the policy. Paragraph V.C. of the policy stated as follows:

> **Arbitration**. All disputes or claims involving [APIC] shall be resolved by binding arbitration, whether such dispute or claim arises between the parties to this Policy, or between [APIC] and any person or entity who is not a party to the Policy but is claiming rights either under the Policy or against [APIC]. This provision is intended to, and shall, encompass the widest possible scope of disputes or claims, including any issues a) with respect to any of the terms or provisions of this Policy, or b) with respect to the performance of any of the parties to the Policy, or c) with respect to any other issue or matter, whether in contract or tort, or in law or equity. Any person or entity asserting such dispute or claim must submit the matter to binding arbitration with the American Arbitration Association, under the Commercial Arbitration Rules of the American Arbitration Association then in effect, by a single arbitrator in good standing. If the person or entity asserting the dispute or claim refuses to arbitrate, then any other party may, by notice as herein provided, require that the dispute be submitted to arbitration within fifteen (15) days. All procedures, methods, and rights with respect to the right to compel arbitration

pursuant to this Article shall be governed by the [FAA]. The arbitration shall occur in Orange County, California. The laws of the State of California shall apply to any substantive, evidentiary or discovery issues. Any questions as to the arbitrability of any dispute or claim shall be decided by the arbitrator. If any party seeks a court order compelling arbitration under this provision, the prevailing party in such motion, petition or other proceeding to compel arbitration shall recover all reasonable legal fees and costs incurred thereby and in any subsequent appeal, and in any action to collect the fees and costs. A judgment shall be entered upon the arbitration award in the U.S. District Court, Central District of California, or if that court lacks jurisdiction, then in the Superior Court of California, County of Orange.

In 2012, Speece was audited by the Nebraska Department of Health and Human Services with regard to his billing for Medicaid reimbursements, and in January 2013, the State of Nebraska filed a civil suit against Speece for violations of law regarding false Medicaid claims. Speece gave notice of the proceedings to APIC and demanded that APIC cover the expenses of his defense. A dispute arose between Speece and APIC regarding whether and to what extent the policy covered the costs of Speece's defense. Speece filed an action in the district court seeking a declaration that APIC was obligated to provide coverage for his defense in the Medicaid proceeding; he also sought damages for breach of contract and bad faith.

APIC filed a motion to compel arbitration. The district court overruled the motion. The court relied on § 25-2602.01. Subsection (b) of the statute generally provides that a provision in a written contract to submit controversies between the parties to arbitration is valid and enforceable. However, subsection (f) of the statute lists certain exceptions to this general rule. Section 25-2602.01(f)(4) provides that, with certain exceptions not relevant to the present case, an arbitration provision is not valid and enforceable in "any agreement concerning or relating to an insurance policy."

The court considered and rejected APIC's argument that § 25-2602.01(f)(4) cannot be applied to Speece's insurance policy because that Nebraska statute is preempted by federal law at least as it applies to foreign risk retention groups. The federal laws that are relevant to this argument are: (1) the FAA, which generally provides that arbitration provisions in written contracts are valid and enforceable; (2) the McCarran-Ferguson Act (MFA), 15 U.S.C. §§ 1011 through 1015 (2012), which provides in relevant part at § 1012(b) that a federal statute does not preempt a state statute "regulating the business of insurance" unless the federal statute "specifically relates to the business of insurance"; and (3) the LRRA, which provides in relevant part at § 3902(a)(1) that a foreign risk retention group is exempt from any state law that would "regulate, directly or indirectly, the operation of a risk retention group."

The district court determined that neither the FAA nor the LRRA preempted § 25-2602.01(f)(4). The court further determined that the Nebraska statute's prohibition of arbitration provisions in "any agreement concerning or relating to an insurance policy" applied to the professional liability policy issued by APIC to Speece in this case. The court concluded that the arbitration clause in the policy was not valid and enforceable, and the court therefore overruled APIC's motion to compel arbitration.

APIC appeals.

## ASSIGNMENT OF ERROR

APIC claims that the district court erred when it overruled its motion to compel arbitration.

## STANDARD OF REVIEW

[1,2] Arbitrability presents a question of law. *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010). On a question of law, we reach a conclusion independent of the court below. See *id*.

## ANALYSIS

APIC claims that the district court erred when it overruled the motion to compel arbitration. APIC contends that federal

law preempts § 25-2602.01(f)(4), which prohibits arbitration clauses in insurance contracts, and that therefore, the court must enforce the arbitration clause in the policy it issued to Speece. As explained below, we conclude that the FAA does not preempt § 25-2602.01(f)(4), but that the LRRA does preempt the application of the Nebraska statute to foreign risk retention groups, and that therefore, the district court erred when it overruled APIC's motion to compel arbitration on the basis that the arbitration clause was prohibited by § 25-2602.01(f)(4).

*Jurisdiction.*

[3] We note as an initial matter that the denial of a motion to compel arbitration is a final, appealable order because it affects a substantial right and is made in a special proceeding. *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004). Therefore, this court has jurisdiction to consider this appeal of the district court's order overruling APIC's motion to compel arbitration.

*FAA Does Not Preempt*
*§ 25-2602.01(f)(4).*

With respect to its conclusion that the FAA does not preempt § 25-2602.01(f)(4), the district court relied on this court's decision in *Kremer, supra*. We agree with the district court's reliance on *Kremer* and the district court's conclusion that the FAA does not preempt § 25-2602.01(f)(4).

[4] In *Kremer*, we noted generally that the FAA provides that written provisions for arbitration are valid and enforceable and that the FAA by its terms preempts inconsistent state laws that apply solely to the enforceability of arbitration provisions. However, we further noted in *Kremer* that the MFA also applied to our analysis and that under the MFA, state law regulating the business of insurance "reverse preempts" federal law that does not specifically govern insurance. 280 Neb. at 605, 788 N.W.2d at 551. We quoted 15 U.S.C. § 1012(b) of the MFA, which provides in part, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of

insurance . . . unless such Act specifically relates to the business of insurance." Applying this provision of the MFA, we determined in *Kremer* that § 25-2602.01(f)(4) is a state statute that regulates the business of insurance; that the FAA is a federal act that does not specifically relate to the business of insurance; and that the FAA operates to invalidate, impair, or supersede § 25-2602.01(f)(4). Based on these determinations and applying § 1012(b) of the MFA, we held that the FAA does not preempt § 25-2602.01(f)(4). However, given the nature of the dispute in *Kremer*, the FAA was not the only federal law that we needed to consider to determine whether federal law preempted § 25-2602.01(f)(4).

Because the dispute at issue in *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010), involved a crop insurance policy, we considered whether federal laws and regulations governing crop insurance, not repeated here, preempted § 25-2602.01(f)(4). We determined in *Kremer* that relevant federal crop insurance laws and regulations specifically "relate[d] to the business of insurance." 280 Neb. at 610, 788 N.W.2d at 554. Therefore, under § 1012(b) of the MFA, such laws were of the type that were not reverse preempted by state statutes "regulating the business of insurance." We noted that the federal crop insurance laws and regulations expressed an intent to preempt state law if state law conflicted with the federal regulations. Because federal regulations requiring arbitration conflicted with the prohibition of arbitration clauses in insurance contracts in § 25-2602.01(f)(4), we concluded that under the MFA, § 25-2602.01(f)(4) did not reverse preempt federal crop insurance law and regulations and that therefore, federal regulations requiring arbitration preempted § 25-2602.01(f)(4) and thus the arbitration clauses of the crop insurance contracts at issue were enforceable.

Similar to the framework we employed in *Kremer*, in the present case, we must consider whether federal law other than the FAA, specifically the LRRA, preempts § 25-2602.01(f)(4) in the same manner that the federal crop insurance law at issue in *Kremer* preempted the state statute.

*LRRA Preempts Application of*
*§ 25-2602.01(f)(4) to Foreign*
*Risk Retention Groups.*

The district court concluded that the LRRA does not preempt § 25-2602.01(f)(4) and that as a result, the arbitration clause in Speece's insurance policy was not enforceable. In reaching its conclusion, the district court relied on *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205 (Mo. App. 2011), in which the Missouri Court of Appeals held that a Missouri statute similar to § 25-2602.01(f)(4) was not preempted by the LRRA. Because we respectfully disagree with the analysis in *Sturgeon*, we determine that the district court's reliance on *Sturgeon* was misplaced. In our analysis which follows, we conclude that under the MFA, the LRRA is a federal statute that "specifically relates to the business of insurance"; that an examination of the provisions of the LRRA shows an express intent to preempt certain state regulations; and that the LRRA preempts the application of § 25-2602.01(f)(4) to foreign risk retention groups. Having eliminated the application of the antiarbitration provision in § 25-2602.01(f)(4), the arbitration clause at issue is enforceable.

We must first determine whether, under § 1012(b) of the MFA, the LRRA is a federal act that "specifically relates to the business of insurance." If it is, then the MFA's "reverse preemption" provision of § 1012(b) does not apply and, if the terms of the LRRA so indicate, the LRRA can be construed to preempt conflicting state law.

[5] We conclude that the LRRA is a federal act that specifically relates to the business of insurance. The basis for this conclusion is apparent from the purpose of the LRRA and its terms. The U.S. Court of Appeals for the Second Circuit recently provided a brief description of the history and purpose of the LRRA as follows:

In the late 1970s, . . . Congress perceived a seemingly unprecedented crisis in the insurance markets, during which many businesses were unable to obtain product liability coverage at any cost. And when businesses could obtain coverage, their options were unpalatable. Premiums often amounted to as much as six percent of gross sales,

and insurance rates increased manyfold within a single year. . . .

After several years of study, Congress enacted the Product Liability Risk Retention Act of 1981 . . . which was meant to be a national response to the crisis. As relevant here, the 1981 Act authorized persons or businesses with similar or related liability exposure to form "risk retention groups" for the purpose of self-insuring. . . . The 1981 Act only applied to product liability and completed operations insurance, but following additional disturbances in the interstate insurance markets, in 1986, Congress enacted the LRRA, and extended the 1981 Act to all commercial liability insurance.

*Wadsworth v. Allied Professionals Ins. Co.*, 748 F.3d 100, 102-03 (2d Cir. 2014) (citations omitted).

[6] With the just-described understanding of the history and purpose of the LRRA, it is clear that the LRRA is a federal act that "specifically relates to the business of insurance" within the meaning of § 1012(b) of the MFA. In contrast to the FAA considered in *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010), the LRRA is the type of federal law excluded from the operation of § 1012(b) of the MFA, and therefore, the MFA does not prevent the LRRA from being construed to preempt state law.

However, the fact that the MFA does not prevent us from construing the LRRA to preempt a state statute does not end our inquiry. We need to determine whether some provision of the LRRA does in fact preempt § 25-2602.01(f)(4).

[7,8] We have stated the following standards with respect to determining whether federal law preempts state law. Under the Supremacy Clause of the U.S. Constitution, state law that conflicts with federal law is invalid. *Kremer, supra.* Federal law preempts state law when state law conflicts with a federal statute or when the U.S. Congress, or an agency acting within the scope of its powers conferred by Congress, explicitly declares an intent to preempt state law. *Id.* Preemption can also impliedly occur when Congress has occupied the entire field to the exclusion of state law claims. *Id.*

[9] As discussed below, we conclude that in the LRRA, Congress explicitly declared an intent to preempt state law regulating the operation of foreign risk retention groups except in certain enumerated instances not applicable here. The LRRA at 15 U.S.C. § 3902 provides in relevant part: "(a) . . . . Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would . . . (1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group[.]" The LRRA thereafter more particularly provides that the state in which a risk retention group is chartered shall regulate the formation and operation of the risk retention group but then provides certain exceptions to preemption pursuant to which any state may impose the specified requirements. An example of a nonchartering power is the LRRA provision authorizing nonchartering states to specify acceptable means for risk retention groups to demonstrate "financial responsibility" as a condition for granting a risk retention group a license or permit to undertake activity within the state. See 15 U.S.C. § 3905(d).

As noted above, the district court in this case relied on the decision of the Missouri Court of Appeals in *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205 (Mo. App. 2011), when it determined that the LRRA did not preempt § 25-2602.01(f)(4). The Missouri court in *Sturgeon* interpreted § 3902 of the LRRA to mean that "a state may not pass laws that keep risk retention groups from operating as insurance companies; however, the LRRA preserves the state's traditional role in the regulation of insurance." 344 S.W.3d at 215. The Missouri court determined that a Missouri antiarbitration statute similar to Nebraska's § 25-2602.01(f)(4) did not conflict with § 3902, because the Missouri state statute did not ""make unlawful"'" the operation of a risk retention group nor did it "'regulate' the operation of [the insurance entity] *as a risk retention group*." *Sturgeon*, 344 S.W.3d at 216 (emphasis in original). The Missouri court basically reasoned that the purpose of the LRRA was to prevent states from discriminating against risk retention groups vis-a-vis other types

of insurance companies. The Missouri court stated that "[t]he LRRA's protection of risk retention groups is based on states' possible discrimination against them. Missouri's prohibition of arbitration clauses in insurance contracts applies to insurance companies across the board, and has no discriminatory effect on risk retention groups." *Sturgeon*, 344 S.W.3d at 217. Because Missouri's prohibition of arbitration clauses did not discriminate against risk retention groups as compared to other insurance companies, the Missouri court concluded that the LRRA did not preempt the state statute. See, also, *National Home Ins. Co. v. King*, 291 F. Supp. 2d 518, 531 (E.D. Ky. 2003) (prohibiting enforcement of arbitration clause did not "'make unlawful'" operation of risk retention group and put it on equal footing with other insurers).

We disagree with the reasoning of the court in *Sturgeon* and its interpretation of the LRRA. Such reasoning focuses on the portion of § 3902 exempting risk retention groups from state laws making their operations unlawful without recognizing or giving adequate emphasis to the additional exemption from laws that regulate their operations. Instead, we agree with the reasoning and interpretation of the Second Circuit Court of Appeals in *Wadsworth v. Allied Professionals Ins. Co.*, 748 F.3d 100 (2d Cir. 2014).

At issue in *Wadsworth* was whether the LRRA preempts a New York state law which requires that any insurance policy issued in the state must include a provision allowing an injured party a direct action against the tort-feasor's insurer for satisfaction of an unsatisfied judgment. The Second Circuit Court of Appeals concluded that the LRRA preempts the application of the New York law to foreign risk retention groups. In reaching this conclusion, the Second Circuit determined that the portions of § 3902 quoted above "clearly announce Congress's explicit intention to preempt state laws regulating risk retention groups." *Wadsworth*, 748 F.3d at 106. The Second Circuit noted that while § 3902 provides for the chartering state to regulate the operations of a risk retention group, "[i]n stark contrast, the [LRRA] authorizes noncharter states to require risk retention groups to comply only with certain basic

registration, capitalization, and taxing requirements, as well as various [unfair] claim settlement and fraudulent practice laws." *Wadsworth*, 748 F.3d at 106.

This expressed intent to preempt state regulation of foreign risk retention groups is in line with the structure of the LRRA. The Second Circuit described the LRRA as enacting "a reticulated structure under which risk retention groups are subject to a tripartite scheme of concurrent federal and state regulation." *Wadsworth*, 748 F.3d at 103. The first part of the scheme is that at the federal level, the LRRA, in what the Second Circuit described as the "'expansive'" and "'sweeping'" language of § 3902, preempts state laws regulating risk retention groups. *Wadsworth*, 748 F.3d at 103. In the second part of the scheme, the LRRA then scales back such preemption by authorizing the domiciliary or chartering state to regulate the formation and operation of a risk retention group, and, in the third part of the scheme, authorizing nondomiciliary states to impose certain specifically enumerated requirements on foreign risk retention groups. In this regard, the Second Circuit stated that "as compared to the near plenary authority [the LRRA] reserves to the chartering state, the [LRRA] sharply limits the secondary regulating authority of nondomiciliary states over risk retention groups . . . ." *Wadsworth*, 748 F.3d at 104. According to the Second Circuit, the purpose of the scheme is "to allow a risk retention group to be regulated by the state in which it is chartered, and to preempt most ordinary forms of regulation by the other states in which it operates." *Wadsworth*, 748 F.3d at 103.

[10] We agree with the Second Circuit's reading of the LRRA. Rather than merely ensuring that risk retention groups are not treated differently from other insurance companies as the district court and the Missouri Court of Appeals reasoned, the LRRA's more encompassing purpose is to permit risk retention groups to efficiently operate on a nationwide basis by providing that they are regulated by their domiciliary states with only limited variations in regulation in the other states in which they operate. The Second Circuit Court of Appeals in *Wadsworth* stated:

A major benefit extended to risk retention groups by the LRRA is the ability to operate on a nationwide basis according to the requirements of the law of a single state, without being compelled to tailor their policies to the specific requirements of every state in which they do business.

748 F.3d at 108. The dictates of the LRRA promote the smooth interstate operation of risk retention groups. The purpose of the LRRA is achieved by the preemption of most regulation of risk retention groups' operations by nondomiciliary states in § 3902.

With this understanding of the LRRA in mind, we consider whether application of § 25-2602.01(f)(4) and its prohibition on arbitration clauses in insurance contracts to foreign risk retention groups is preempted by § 3902 of the LRRA. The relevant portion of § 3902 provides that "a risk retention group is exempt from any State law . . . to the extent that such law . . . would . . . regulate, directly or indirectly, the operation of a risk retention group." The question then is whether application of § 25-2602.01(f)(4) would "regulate . . . the operation of a risk retention group." In this regard, we note that in *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 608, 788 N.W.2d 538, 553 (2010), for purposes of determining whether the MFA "reverse preemption" applied, we concluded that "a statute precluding the parties to an insurance contract from including an arbitration agreement for future controversies regulates the insurer-insured contractual relationship[, and t]hus, it regulates the business of insurance." Similar to the reasoning that led us to conclude that § 25-2602.01(f)(4) "regulates the business of insurance," we conclude that this statute regulates the "operation of a risk retention group."

As noted above, in *Wadsworth v. Allied Professionals Ins. Co.*, 748 F.3d 100 (2d Cir. 2014), the Second Circuit Court of Appeals considered a New York state law requiring that any insurance policy issued in the state must include a provision allowing an injured party a direct action against the tortfeasor's insurer for satisfaction of an unsatisfied judgment. The Second Circuit Court of Appeals considered whether the

New York law regulates the operations of a risk retention group within the meaning of § 3902 of the LRRA. The Second Circuit concluded that it did, reasoning as follows:

> [The New York law] specifically governs the content of insurance policies, requiring insurers to place in their New York contracts a provision that is not contemplated by the LRRA, and that is not required by all other states. Application of the statute would therefore make it difficult for a foreign risk retention group to maintain uniform underwriting, administration, claims handling, and dispute resolution processes. . . . Requiring compliance with various state regulations governing the content of insurance policies would, in the aggregate, thwart the efficient interstate operation of risk retention groups.

*Wadsworth*, 748 F.3d at 108.

[11] We similarly conclude that the prohibition of an arbitration clause in insurance policies pursuant to § 25-2602.01(f)(4) regulates the operation of a risk retention group within the meaning of § 3902 of the LRRA. Although the Nebraska law prohibits a contract term rather than mandating a term like the New York law at issue in *Wadsworth*, the Nebraska statute nevertheless "governs the content of insurance policies" and prohibits a term that might be allowed by a foreign risk retention group's domiciliary state. Application of § 25-2602.01(f)(4) would make it difficult for a foreign risk retention group whose domiciliary state allowed arbitration clauses in insurance policies to maintain uniform underwriting, administration, claims handling, and dispute resolution processes nationwide, and it therefore would also "thwart the efficient interstate operation of risk retention groups." *Wadsworth*, *supra*. Because § 25-2602.01(f)(4) regulates the operation of a risk retention group, it is the type of statute from which a foreign risk retention group is "exempt" under § 3902 of the LRRA. In other words, we conclude that application of § 25-2602.01(f)(4) is preempted by the LRRA and that APIC's motion to compel arbitration had merit.

Notwithstanding our conclusion that § 25-2602.01(f)(4) is preempted by the LRRA, Speece makes several arguments

all to the effect that § 25-2602.01(f)(4) is within the type of requirements that the LRRA permits nondomiciliary states to impose on foreign risk retention groups. We find none of these arguments to have merit.

Speece first argues that § 25-2602.01(f)(4) falls within the exception of § 3902(a)(4) of the LRRA, which provides that although risk retention groups are exempt from any state law that would "discriminate against a risk retention group, . . . nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations." Speece's argument relies on the understanding of the LRRA set forth in *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205 (Mo. App. 2011), which emphasized that the purpose of the LRRA is to ensure that noncharter-ing states do not treat risk retention groups differently from other insurance companies. We note, however, that the language of § 3902(a)(4) of the LRRA means that "State laws generally applicable to persons or corporations" apply to risk retention groups, but it does not mean that risk reten-tion groups must comport with laws generally applicable to insurance companies. The prohibition of arbitration clauses in § 25-2602.01(f)(4) applies to "insurance contracts," and it therefore applies specifically to insurance companies rather than generally to persons or corporations. The prohibition in § 25-2602.01(f)(4) is not one of general application, and it therefore is not excluded from the preemptive effect of § 3902.

Speece also refers us to § 3901(b) of the LRRA, which provides in relevant part that "[n]othing in this chapter shall be construed to affect . . . the law governing the interpretation of insurance contracts of any State . . . ." He argues that this provision saves § 25-2602.01(f)(4) from the preemptive effect of § 3902 because the state statutory law "determines the effect that is to be given to mandatory arbitration clauses in insur-ance contracts under Nebraska law." Brief for appellee at 9. We reject this argument. A statute prohibiting an arbitration clause does not govern the interpretation of the contract. It does not mandate or guide how contract terms are to be interpreted;

instead, it mandates that certain terms may not be included in the contract. It is not a "law governing the interpretation of insurance contracts" as used in § 3901(b).

Finally, Speece refers us to § 3905(c) of the LRRA, which provides that "[t]he terms of any insurance policy provided by a risk retention group . . . shall not provide or be construed to provide insurance policy coverage prohibited generally by State statute . . . ." He argues that this section provides that states may regulate the terms risk retention groups include in insurance policies and that therefore, the LRRA does not preempt § 25-2602.01(f)(4). Section 3905(c) does not apply to all terms of an insurance policy, only to terms setting forth the coverage provided under the policy. An arbitration clause does not concern—much less prohibit—the coverage provided, but instead governs how disputes between the parties are to be resolved.

[12] We determine that § 25-2602.01(f)(4) is a state law that would regulate the "operation of a risk retention group" as understood in § 3902(a) of the LRRA, that it is not the type of requirement that the LRRA allows states to impose on foreign risk retention groups, and that it is the type of statute from which Congress exempts foreign risk retention groups in § 3902 of the LRRA. We conclude therefore that by virtue of the exemption in § 3902, the LRRA, by its terms, preempts the application of § 25-2602.01(f)(4) to foreign risk retention groups.

Because of such preemption, the prohibition of arbitration clauses in insurance contracts in § 25-2602.01(f)(4) does not extend to insurance contracts issued by a foreign risk retention group such as APIC. The district court therefore erred when it denied APIC's motion to compel arbitration on the basis that the arbitration clause in the parties' insurance contract was prohibited by § 25-2602.01(f)(4).

*We Do Not Address Whether*
*the Arbitration Clause*
*Is Unconscionable.*

[13] In their briefs, both parties assert that Speece argued to the district court that even if § 25-2602.01(f)(4) is preempted

by federal law, the arbitration clause in the policy in this case is unconscionable and therefore unenforceable. However, because the district court concluded that § 25-2602.01(f)(4) was not preempted by federal law and that the Nebraska statute prohibited enforcement of the arbitration clause in the parties' insurance contract, the court did not address the issue of unconscionability. No cross-appeal has been filed claiming that the district court erred when it did not address the unconscionability issue. An appellate court will not consider an issue on appeal that the trial court has not decided. *Conley v. Brazer*, 278 Neb. 508, 772 N.W.2d 545 (2009). We therefore do not comment on whether the arbitration provision is unconscionable.

## CONCLUSION

Section 25-2602.01(f)(4) generally provides that an arbitration provision is not valid and enforceable in "any agreement concerning or relating to an insurance policy." We conclude that although the FAA does not preempt § 25-2602.01(f)(4), the LRRA does preempt the application of this Nebraska statute to foreign risk retention groups, and that as a result, the arbitration clause in the policy APIC issued to Speece was not prohibited by § 25-2602.01(f)(4). We conclude therefore that the district court erred when it overruled APIC's motion to compel arbitration on the basis that the arbitration clause was prohibited by § 25-2602.01(f)(4). We reverse the district court's order and remand the cause to the district court for further proceedings.

Reversed and remanded for further proceedings.

Wright, J., not participating.