303 Ga. 659
FINAL COPY

S18A0505.  REIS et al. v. OOIDA RISK RETENTION GROUP, INC.

HINES, Chief Justice.

This is an appeal by plaintiffs Candice Reis and Melvin Williams ("Plaintiffs") from the grant of summary judgment to defendant OOIDA Risk Retention Group, Inc. ("OOIDA"), in this direct action against OOIDA and others arising from a vehicular collision involving Plaintiffs and a motor carrier insured by OOIDA.  At issue is whether provisions in the federal Liability Risk Retention Act of 1986 ("the LRRA"), 15 USC § 3901 et seq., preempt Georgia's motor carrier and insurance carrier direct action statutes ("direct action statutes"), OCGA §§ 40-1-112 (c),[1] 40-2-140 (d) (4),[2] in regard to risk retention

---

[1] OCGA § 40-1-112 (c) provides:
> It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract.

[2] OCGA § 40-2-140 (d) (4) provides:
> Any person having a cause of action, whether arising in tort or contract, under this Code section may join in the same cause of action the motor carrier and its insurance carrier.

groups,[3] thereby precluding this direct action against OOIDA. For the reasons that follow, we conclude that there is federal preemption of this action against OOIDA, and consequently, we affirm.[4]

*Background*

On February 8, 2015, Plaintiffs were in a car when they were involved in a collision with a 2001 Freightliner driven by defendant Andre Robinson ("Robinson") and owned by defendant James Powell ("Powell"), d/b/a Zion Train Express, Inc. ("Zion Train"), and insured by OOIDA. OOIDA is a liability risk retention group not chartered or domiciled in Georgia and created pursuant to the LRRA. OOIDA is registered in Georgia as a foreign risk retention group.

Plaintiffs filed the present action in superior court against Robinson, Powell, Zion Train, and OOIDA for alleged damages arising from the collision.

---

[3] A "risk retention group" is, inter alia, a corporation or other limited liability association whose primary activity is assuming and spreading the liability exposure of its group members, is chartered or licensed as a liability insurance company and authorized to do business as such under the insurance laws of a state, and has as its owners and members only those who comprise the membership of the risk retention group. 15 USC § 3901 (a) (4).

[4] Plaintiffs filed their appeal in the Court of Appeals, and the Court of Appeals transferred it to this Court on the basis of this Court's constitutional question jurisdiction as set forth in Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). See *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 444 n. 1 (807 SE2d 381) (2017).

OOIDA moved for summary judgment asserting that the direct action statutes do not contemplate suits against risk retention groups, and even if they did, they would be preempted by the LRRA. The superior court concluded that there was federal preemption of Georgia's direct action statutes, and therefore, that OOIDA is not subject to suit under them.

*Federal Preemption Doctrine*

The Supremacy Clause of the United States Constitution mandates that federal law will preempt a state law that is inconsistent with it. U. S. Const., Art. VI, cl. 2. Such preemption may be either express or implied, and "is 'compelled whether Congress'[s] command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Poloney v. Tambrands*, 260 Ga. 850, 850-851 (1) (412 SE2d 526) (1991), quoting *Fidelity Federal Savings & Loan Assn. v. de la Cuesta*, 458 U. S. 141, 153 (102 SCt 3014, 73 LE2d 664) (1982) and *Jones v. Rath Packing Co.*, 430 U. S. 519, 525 (97 SCt 1305, 51 LE2d 604) (1977). And, "(w)hen a federal statute unambiguously precludes certain types of state (law), we need go no further than the statutory language to determine whether the state (law) is preempted." *Poloney v. Tambrands*, supra at 851 (1), quoting *Exxon Corp. v. Hunt*, 475 U. S. 355, 362 (106 SCt

1103, 89 LE2d 364) (1986).    However, when Congress has enacted legislation in an area traditionally regulated by the states, there is an assumption that the states' powers are not to be superseded by the federal law unless that was Congress's clear and manifest purpose.  *Wyeth v. Levine*, 555 U. S. 555, 565 (129 SCt 1187, 173 LE2d 51) (2009).  The business of insurance is such an area traditionally regulated by the states.  See the *McCarran-Ferguson Act*, 15 USC § 1011 et seq.[5]  Therefore, a state law enacted for the purpose of regulating insurance would not yield to a conflicting federal law unless the federal law specifically requires it.  15 USC § 1012;[6] *United States Dept. of Treasury v.*

[5] 15 USC § 1011 provides:
   The Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

[6] 15 USC § 1012 provides:
(a) State regulation
   The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) Federal regulation
   No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 USC § 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

*Fabe*, 508 U. S. 491, 507 (113 SCt 2202, 124 LE2d 449) (1993).

## *History of the LRRA*

The original version of the LRRA was enacted by Congress in 1981 as the "Product Liability Risk Retention Act of 1981" ("PLRRA"), 15 USC §§ 3901-3904 (1982), and did not encompass motor vehicle liability insurance but was limited to product liability insurance. *Mears Transp. Group v. State*, 34 F3d 1013, 1016 (11th Cir. 1994). The PLRRA was expanded by Congress in 1986 resulting in the LRRA in order to encompass all commercial liability insurance. *Wadsworth v. Allied Professionals Ins. Co.*, 748 F3d 100, 103 (2d Cir. 2014).

## *The LRRA's Statutory Scheme*

The structure of the LRRA is ably explained in *Wadsworth*. Risk retention groups are governed by a tripartite scheme composed of both federal and state regulations:

First, at the federal level, [the LRRA] preempts "any State law, rule,

regulation, or order to the extent that such law, rule, regulation or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group," 15 [USC] § 3902 (a) (1) . . . . The second part of the scheme secures the authority of the domiciliary, or chartering, state to "regulate the formation and operation" of risk retention groups. 15 [USC] § 3902 (a) (1). Federal preemption, therefore, functions not in aid of a comprehensive federal regulatory scheme, but rather to allow a risk retention group to be regulated by the state in which it is chartered, and to preempt most ordinary forms of regulation by the other states in which it operates. Thus, [the LRRA] provides for broad preemption of a [nondomiciliary] state's licensing and regulatory laws. Similarly, [the LRRA] prohibits states from enacting regulations of any kind that discriminate against risk retention groups or their members, but does not exempt risk retention groups from laws that are generally applicable to persons or corporations. 15 [USC] § 3902 (a) (4). While [the LRRA] assigns the primary regulatory supervision of risk retention groups to the single state of domicile, the third part of its regulatory structure explicitly preserves for nondomiciliary states several very important powers. [It] specifically enumerates those reserved powers in subsequent subsections, with many powers of the nondomiciliary state being concurrent with those of the chartering state. See 15 [USC] §§ 3902 (a) (1) (A)-(I), 3905 (d). In particular, subject to [the LRRA's] anti-discrimination provisions, nondomiciliary states have the authority to specify acceptable means for risk retention groups to demonstrate "financial responsibility" as a condition for granting a risk retention group a license or permit to undertake specified activities within the state's borders. 15 [USC] § 3905 (d). . . . In short, as compared to the near plenary authority it reserves to the chartering state, [the LRRA] sharply limits the secondary regulatory authority of nondomiciliary states over risk retention groups to specified, if significant, spheres.

*Wadsworth v. Allied Professionals Ins. Co.*, supra at 103-104 (citations and punctuation omitted).

## *Discussion*

As noted, 15 USC § 3902 (a) (1) provides, in relevant part, that "a risk retention group is exempt from any State law . . . to the extent that such law . . . would make unlawful, or regulate, directly or indirectly, the operation of a risk retention group. . . ." And, it is undisputed that OOIDA is a risk retention group governed by the LRRA and that it is not chartered or domiciled in Georgia. Therefore, 15 USC § 3902 (a) (1), insofar as it relates to the powers of nondomiciliary states, governs the authority of Georgia to impose regulations on OOIDA's operations in Georgia. In the case at bar, the superior court concluded that the LRRA preempted Georgia's direct action statutes after finding that the statutes would "'regulate, directly or indirectly the operation of the risk retention group as prohibited by 15 [USC] § 3902 (a) (1).'"

Plaintiffs urge that the direct action statutes[7] do not regulate the operation of risk retention groups but rather are "financial responsibility laws," as set forth

---

[7] Plaintiffs focus solely on OCGA § 40-1-112 (c); however, their challenge also implicates OCGA § 40-2-140 (d) (4).

in 15 USC § 3905,[8] and therefore, are not preempted by the LRRA. They argue that the direct action statutes qualify as financial responsibility laws because they are in the nature of an indemnity policy benefitting the public, that the purpose of requiring an indemnity insurance policy, formerly a bond, is to evidence the financial responsibility of the motor carrier, and that the Federal Motor Carrier Safety Act designates laws requiring insurance or a bond for motor carriers as financial requirement laws. See 49 CFR § 387.7 (a).[9] They

[8] 15 USC § 3905 provides in relevant part:

**(a) No exemption from State motor vehicle no-fault and motor vehicle financial responsibility laws**

Nothing in this chapter shall be construed to exempt a risk retention group or purchasing group authorized under this chapter from the policy form or coverage requirements of any State motor vehicle no-fault or motor vehicle financial responsibility insurance law.

. . .

**(d) State authority to specify acceptable means of demonstrating financial responsibility**

Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group, or any other person.

[9] 49 CFR § 387.7 (a) provides:

(a) No motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in § 387.9 of this subpart.

further cite *Mears Transp. Group v. State*, supra, in support of their argument that the direct action statutes are really financial responsibility laws. But, Plaintiffs' argument is unavailing. As acknowledged by Plaintiffs, *Mears* did not involve direct action statutes. Rather, *Mears* was a challenge by for-profit passenger transportation companies, and the risk retention group from which they purchased insurance, to the validity of a Florida statute[10] which required owners and operators of for-hire transportation vehicles to maintain certain specified insurance coverage, expressly for the purpose of proving financial responsibility. Id. at 1014. The direct action statutes are not financial responsibility laws as they in no manner assure the financial soundness or solvency of a risk retention group. Rather, the direct action statutes provide a

_____

[10] The statute at issue was Fla. Stat. § 324.031 which provided, in relevant part:
  The owner or operator of a taxicab, limousine, jitney, or any other for-hire passenger transportation vehicle may prove financial responsibility by providing satisfactory evidence of holding a motor vehicle liability policy as defined in s. 324.021(8) or s. 324.151, which policy is issued by an insurance carrier which is a member of the Florida Insurance Guaranty Association. *The operator or owner of any other vehicle may prove his or her financial responsibility by*:
    (1) Furnishing satisfactory evidence of holding a motor vehicle liability policy . . . ;
    (2) Furnishing a certificate of self-insurance showing a deposit of cash . . . ;
    (3) Furnishing a certificate of self-insurance issued by the department . . . .
  (Emphasis supplied.)

vehicle for directly naming a risk retention group as a party in a lawsuit.

In contrast, *Wadsworth*, like the present case, involved a state direct action statute. In *Wadsworth*, the plaintiff filed a personal injury action against a chiropractor in New York. Judgment was entered against the chiropractor, which judgment the chiropractor failed to satisfy. The plaintiff then filed a direct action against the chiropractor's insurer, a risk retention group not domiciled in New York, pursuant to a New York insurance law[11] that required insurance policies issued in New York to contain a provision permitting, in specified circumstances, a party with an unsatisfied judgment to maintain a direct action against the tortfeasor's insurer for the satisfaction of that judgment. Id. at 101. Like Georgia, New York's insurance law regarding risk retention groups largely mirrored the structure of the LRRA. Id. at 104; see OCGA § 33-40-1 et seq. The *Wadsworth* court found that such a direct action statute, which is in derogation of the common law, vested a substantive right in an injured party against a tortfeasor's insurer. *Wadsworth* at 104-105. Similarly, a prior Georgia direct action statute addressing motor carriers and insurance carriers has

---

[11] The statute at issue was N.Y. Ins. Law § 3420 (a) (2).

been held to be substantive in nature, rather than procedural.[12]  *Hidalgo v. Ohio Security Ins. Co.*,  2011 WL 12711470, at n. 3 (N.D. Ga. 2011), citing  *Shapiro v. Aetna Cas. & Sur. Co.*, 234 FSupp. 41, 42 (N.D. Ga. 1963).  The *Wadsworth* court focused on Congress's intent to exempt risk retention groups broadly from any requirement of state law that would make it difficult for such groups to form or to operate on a multi-state basis.  *Wadsworth*  at 107.  It concluded that an expansive reading of the preemption language furthered the purpose of the LRRA.  Id.  That court confirmed its prior determination that,

> [i]n enacting the LRRA, . . . Congress desired to decrease insurance rates and increase the availability of coverage by promoting greater competition within the insurance industry. . . . Congress intended to exempt [risk retention groups] broadly from state law requirements that make it difficult for risk retention groups to form or to operate on a multi-state basis.

Id.     (Citations and punctuation omitted.)      Indeed, other courts have

---

[12] Former OCGA § 46-7-12 (c) provided:
    It shall be permissible under this article for any person having a cause of action arising under this article to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract.

acknowledged the broad preemptive effect of the LRRA.[13] The *Wadsworth* court further concluded that application of the direct action statute to a foreign risk retention group would "undoubtedly 'regulate, directly or indirectly,' those groups by subjecting them to lawsuits" filed in other states by claimants who are not parties to the contracts with the insureds. Id. at 108. The court expressed concern, as did the superior court in the present case, that "[t]he cost of litigation might well result in higher attorneys' fees, costs, and potential recoveries." Id.

Section 3902 (b) of the LRRA expressly provides that "[t]he exemptions specified in subsection (a) apply to laws governing the *insurance business . . . .*" (Emphasis supplied.) It has been held that whether a practice is part of "the business of insurance" can be determined by consideration of three characteristics: whether the practice effectively transfers or spreads a

---

[13] See, e.g., *Mora v. Lancet Indem. Risk Retention Group*, 2017 WL 818718, *5 (D. Md. Mar. 1, 2017) ("[C]ourts across the country have concluded that the LRRA's preemption is sweeping and covers most state insurance laws."); *Attorneys Liability Protection Society v. Ingaldson Fitzgerald, P.C.*, 838 F3d 976, 980 (9th Cir. 2016) ("When considering whether the LRRA preempts a state law, we first determine whether the challenged aspect of the state law offends the LRRA's broad preemption language."); *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 86 (853 NW2d 169) (2014) ("We agree with the Second Circuit's reading of the LRRA [in *Wadsworth*]."); *Alliance of Nonprofits for Ins., Risk Retention Group v. Kipper*, 712 F3d 1316, 1321 (9th Cir. 2013) ("The LRRA broadly preempts 'any State . . . order to the extent that such . . . order would . . . make unlawful, or regulate, directly or indirectly, the operation of (an RRG).'").

policyholder's risk; whether it is an integral part of the contractual relationship between the insurer and the insured; and whether the practice is limited to entities within the insurance industry. *Union Labor Life Ins. Co. v. Pireno*, 458 U. S. 119, 129 (102 SCt 3002, 73 LE2d 647) (1982). The direct action statutes would impact operation of the business of insurance of a risk retention group inasmuch as application of the statutes would result in the spreading of risk and associated increases in costs due to the additional financial burden of defending unanticipated lawsuits in which they are directly named as parties, in affecting the relationship between an insurer and insured by creating possible conflicts of interest between the insurer and the policyholder, and in limiting their application to insurers of motor carriers. Therefore, the direct action statutes would regulate the operation of risk retention groups. See *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 88 (853 NW2d 169) (2014).

The clear goal of the LRRA is to streamline the operations of risk retention groups like OOIDA by subjecting them to consistent regulation overseen by their chartering state. *Wadsworth*, supra at 108. The direct action statutes subject insurers of motor carriers to lawsuits as parties, and thus, exposes them directly to liability and any consequent damages. As such, direct action statutes both

directly and indirectly regulate the operations of insurers of motor carriers in Georgia. While this type of regulating may be permissible with respect to traditional insurance carriers, it is not allowed in the case of a foreign risk retention group by the express act of Congress in the LRRA. 15 USC § 3902 (a) (1). And, we cannot disregard Congress's command. *Poloney v. Tambrands*, supra at 850-851 (1).

In summary, application of the direct action statutory provisions, OCGA §§ 40-1-112 (c), 40-2-140 (d) (4), to the risk retention group OOIDA is preempted by the LRRA. Accordingly, the superior court properly granted summary judgment to OOIDA.

Judgment affirmed. All the Justices concur.

Decided May 7, 2018.

OCGA §§ 40-1-112 (c), 40-2-140 (d) (4); constitutional question. Newton Superior Court. Before Judge Ozburn.

Jason & Bradley, Daniel C. Jason, for appellants.

McMickle, Kurey & Branch, Scott W. McMickle, Zach M. Matthews, for appellees.

Levy & Pruett, Susan J. Levy, H. Lee Pruett, amici curiae.